IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARCY SAMUELS,[1] | § | |
| | § | |
| Respondent Below, | § | No. 270, 2024 |
| Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| WALTER SAMUELS, IV, | § | File No. CK22-01439 |
| | § | Petition No. 22-05659 |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: January 10, 2025
Decided:    March 17, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the parties' briefs and the record below, it appears to the Court that:

(1)    The respondent below-appellant, Marcy Samuels ("Wife"), filed this appeal from the Family Court's orders addressing property division and alimony. For the reasons set forth below, this Court affirms the Family Court's judgment.

(2)    Wife and the petitioner below-appellee, Walter Samuels, IV, were married on November 8, 2008, legally separated on December 8, 2021, and divorced on July 19, 2022. They had no children. The Family Court retained jurisdiction

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

over property division, alimony, court costs, and attorneys' fees. After a hearing, the Family Court issued a decision deciding the ancillary matters on February 29, 2024 ("Ancillary Matters Decision"). Except as the parties had previously agreed otherwise, the court ordered the marital estate to be equitably distributed 60/40 in favor of Wife and Husband to pay alimony of $2,309 per month beginning on the first day of the month after Wife's refinancing of the marital residence or the sale of the home to a third party.

(3) Husband moved for reargument. He argued that his monthly alimony obligation should be reduced to $1,724 because the Family Court misapprehended the facts concerning his $1,148 in monthly daycare expenses and should not have eliminated those expenses from his monthly expenses. He also argued that the Family Court should reconsider the effective date of alimony because it had overlooked the substantial voluntary support Husband had provided to Wife while the ancillary proceedings were pending. Wife opposed the motion.

(4) On July 2, 2024, the Family Court granted in part Husband's motion for reargument ("Reargument Order"). The court reduced his alimony obligation to $1,834 after adding $949 to his monthly expenses for childcare costs. The court also concluded that it had not fairly considered Husband's contribution to Wife's household expenses between May 2022 and September 2023 and modified the effective date of alimony to August 1, 2022 (the month after the parties divorced).

2

(5) On July 10, 2024, Wife, who had been represented by counsel in the Family Court, filed a *pro se* notice of appeal in this Court. Shortly thereafter Wife filed a *pro se* motion for reargument of the July 2, 2024 order in the Family Court. The Family Court denied the motion.

(6) Wife's arguments on appeal may be summarized as follows: (i) the Family Court incorrectly stated that both Husband and Wife were on the deed to the marital residence; (ii) the Court should consider bank records attached to her opening brief, but not submitted below, to hold that the Family Court erred in determining that a particular bank account was marital property; (iii) the Family Court erred in finding that Husband earned approximately $101,731 a year instead of $127,780; (iv) the Family Court erred in adding childcare expenses to Husband's monthly expenses; and (v) the Family Court erred in changing the effective date of alimony.

(7) This Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[2] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical

---

[2] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

reasoning process.[3]  We review legal rulings *de novo*.[4]  If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[5]

(8)  We first address Wife's contention that the Family Court incorrectly stated that both Husband and Wife were on the deed of the marital residence. Relying on emails exchanged by the parties in the summer of 2024, Wife also claims that she has been unable to refinance the mortgage because she is not on the deed. Husband admits that the Family Court erroneously described both Husband as Wife on being the deed, but argues that this was harmless error.  We agree.

(9)  "When a Family Court judge misstates a fact, but the misstated fact does not weigh significantly in his […] analysis, the misstatement is considered harmless error."[6]  In the Ancillary Matters Decision, the Family Court focused on the matters that the parties were unable to agree upon, which did not include the marital home.  The Family Court accepted the parties' pretrial stipulation that Wife could retain the house if she could refinance the mortgage into her sole name and pay Husband his share of the equity in the house, but if she was unable to do so then the house would be sold and the net proceeds split by the property division percentage determined by the court.  The court's factual findings concerning the

---

[3] *Id.*
[4] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008)
[5] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[6] *Howard v. Howard*, 2010 WL 5342972, at *1 (Del. Dec. 21, 2010).

4

matters that remained in dispute included a passing reference to both Husband and Wife being on the deed for the house, but this misstatement did not affect how the parties' home was titled, did not change the agreement of the parties, and had no impact on the Family Court's resolution of the disputed issues. As to Wife's reliance on emails concerning the deed and her unsuccessful efforts to refinance the mortgage in the summer of 2024, this information is beyond the scope of the record on appeal and must be presented to the Family Court in the first instance.[7]

(10)  We next address Wife's request that we consider bank records attached to her opening brief, but not part of the record below, to hold that the Family Court erred in determining that TD Bank account number 0138 was marital property. Under 13 *Del. C.* § 1513, the Family Court has broad discretion to divide marital property.[8]  "All property acquired by either party subsequent to the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety."[9]  Based on Wife's failure to provide any bank records for TD Bank account number 0138, including documentation showing when the account was opened, and her testimony that she regularly deposited and withdrew

---

[7] *See, e.g., Price v. Boulden*, 2014 WL 3566030, at *2 (Del. July 14, 2014) ("[T]his evidence was not available to the Family Court in the first instance, is outside of the record on appeal, and cannot properly be considered by this Court.").
[8] *Linder v. Linder*, 496 A.2d 1028, 1030 (Del. 1985).
[9] 13 *Del. C.* § 1513(c).

funds from the account during the marriage, the Family Court found that the account was marital property subject to the 60/40 property division split in favor of Wife.

(11) Wife has attached bank records to her opening brief that she contends show the bank account was her premarital property. She claims that she provided these records to her counsel and thought they were part of the Family Court record. As Husband emphasizes, there is no indication in the record that these bank records were provided to the Family Court. This Court does not consider evidence that was not presented to the trial court in the first instance.[10] Accordingly, we decline to consider the bank records attached to Wife's opening brief and find no reversible error in the Family Court's determination that TD Bank account number 0138 was marital property.

(12) We now turn to Wife's arguments concerning the Family Court's calculation of alimony. Under the alimony statute, 13 *Del. C.* § 1512, the Family Court must consider "all relevant factors," including the enumerated statutory factors, when determining whether a party seeking alimony is dependent and calculating alimony if dependency is found.[11] "The Family Court has broad discretion in determining an alimony award."[12]

---

[10] *Price*, 2014 WL 3566030, at *2.
[11] *Glanden v. Quirk*, 128 A.3d 994, 1002 (Del. 2015).
[12] *Lankford v. Lankford*, 157 A.3d 1235, 1242 (Del. 2017).

(13) Wife first argues that the Family Court erred in using Husband's 2021 earnings of $101,731 instead of his 2022 earnings of $127,780.[13] It is unclear why Wife believes the $101,731 income for Husband is from 2021. In calculating alimony, the Family Court relied upon the annual income figures provided by the parties in the November 2023 pretrial stipulation. In that stipulation, Husband identified his income as $101,731 and Wife identified her income as $32,000. Husband disputed Wife's income, asserting that she was underemployed, while Wife contended that Husband's income exceeded $130,000 per year.

(14) Husband argues that Wife's failure to obtain a transcript of the ancillary hearing precludes appellate review of her claim that the Family Court erred in determining his income. Under the Supreme Court Rules, the appellant is required to provide the Court with "such portions of the trial transcript as are necessary to give this Court a fair and accurate account of the context in which the claim of error occurred [as well as] a transcript of all evidence relevant to the challenged finding or conclusion."[14] Wife contends that a transcript is unnecessary because the hearing exhibits (specifically a Social Security Statement showing Husband's earnings for 2022) support her claim that Husband's income was $127,780. But some of the

---

[13] Wife also argues that the total for Husband's adjusted expenses in the chart in the Ancillary Matters Decision is incorrect, but the total is correct in the Budget Report attached as an exhibit to the decision and the Family Court's calculation of alimony is consistent with the Budget Report. The correct figures also appear in the Reargument Order.

[14] Del. Supr. Ct. 14(e).

7

exhibits (like Husband's W2s from 2023) are more consistent with the $101,731 income attributed to Husband. In the absence of a transcript of the ancillary hearing, this Court lacks an adequate basis to review Wife's claim that the Family Court erred in determining Husband's income.[15]

(15)  Wife next argues that the Family Court should not have added childcare costs to Husband's expenses for a child born in 2023 while using Husband's income from 2021.[16]  As previously discussed, it is unclear why Wife believes the Family Court relied on Husband's income from 2021.  The Family Court eliminated all of Husband's childcare costs from his expenses in the Ancillary Matters Decision, but acknowledged that Husband was obligated to support his child and included some of those costs in the Reargument Order.  The Family Court declined to award the full amount of daycare costs sought by Husband ($1,148) because Husband had not provided any evidence concerning the income of the child's mother or how much she contributed to childcare expenses.  Instead, the Family Court added the monthly primary support need for one child ($750) from the Delaware Child Support Calculation to the monthly daycare cost ($1,148) and attributed half of that ($949)

---

[15] *See, e.g., Mahan v. Mahan*, 2007 WL 1850905, at *1 (Del. June 28, 2007) (affirming in appeal from Family Court where the appellant did not provide transcripts that would enable appellate review of his claims of error).

[16] By the time Husband moved for reargument, he had a second child.  No costs related to that child were included in Husband's monthly expenses.

to Husband. Wife has not shown that the Family Court erred in adding some of Husband's childcare costs to his monthly expenses.

(16) Nor has Wife shown that the Family Court erred in changing the effective date of alimony from the eventual disposition of the marital home to August 1, 2022, the first day of the month following the parties' divorce in July 2022. The Family Court changed the effective date because it concluded that it had overlooked Husband's contributions toward expenses related to the marital home—aside from mortgage payments—between May 2022 (when Husband moved out of the home) and September 2023 (when he paid only the mortgage directly). We find no reversible error in the Family Court's exercise of its "authority to determine when a party's alimony obligations commence."[17]

(17) Finally, Husband requests that the Court award him the fees he incurred in defending this appeal based on Wife's failure to obtain provide a transcript of the hearing on ancillary matters. Rule 20(f) provides that this Court may award costs and expenses, including attorneys' fees, to an appellee in a frivolous appeal, but the appellee must file a motion in conformance with Rule 30 by the deadline for the filing of a reply brief. Because Husband has not filed such a motion or shown that Wife's appeal was frivolous, the Court declines his request.

---

[17] *Killen v. Alben*, 304 A.3d 940, 950 (Del. 2023).

9

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice